IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KENNETH WAYNE HENDRIX,    )
AIS #208777,    )
    )
       Plaintiff,    )
    )
    v.    )   CASE NO. 2:15-CV-247-WKW
    )       (WO)
    )
CARTER DAVENPORT, et al.,    )
    )
       Defendants.    )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Kenneth Wayne Hendrix, an indigent state inmate, challenging actions which occurred on April 8, 2015 at the Easterling Correctional Facility.[2]  Doc. 1 at 2–6.  Specifically, Hendrix alleges that the defendants acted with deliberate indifference when they failed to protect him from attack by inmate Unzell Tuck and thereafter delayed his access to medical treatment briefly in an effort to identify the attacker and photograph his injuries.  Doc. 1 at 5–6.  The named defendants are Warden Carter Davenport, Warden Derrick Carter, Captain Nathaniel Lawson, Captain Willie Bryant, Sergeant Dominic Jones, and Lieutenant Larry Peavy.  Hendrix seeks monetary damages and injunctive relief in this cause of action.

---

[1]All documents and page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2]Hendrix is now incarcerated at the Staton Correctional Facility.

The defendants filed a special report, supplemental special report, amendment to the supplemental report, second supplemental special and relevant evidentiary materials in support of these reports, including affidavits, prison documents and medical records, addressing the claims presented by Hendrix.  In these documents, the defendants deny that they acted with deliberate indifference to Hendrix's safety or medical needs.

After reviewing the special reports, the court issued orders on July 23, 2015, Doc. 28, and August 16, 2017, Doc. 42, directing Hendrix to file a response to the defendants' special reports supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  These orders specifically cautioned that "**unless within fifteen (15) days from the date of this order a party … presents sufficient legal cause why such action should not be undertaken** … the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 28 at 2–3; Doc. 42 at 2.  Hendrix filed responses to these orders.  Doc. 37; Doc. 47.

Pursuant to the orders entered on July 23, 2015 and August 16, 2017, the court now treats the defendant's special report and supplements thereto as a motion for summary judgment, and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Rule 56(a), Fed.R.Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [– now dispute –] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that

---

[3]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain applicable to the current rule.

the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24. The moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may … grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."). Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact. *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party

produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be admissible at trial supporting each essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable … or is not significantly probative … summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted). Conclusory allegations based on a plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995)

(holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").   Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.   *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists).   At the summary judgment stage, this court must "consider all evidence in the record … [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."   *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

6

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts … . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477

U.S. at 323–24.  A court may grant summary judgment where the pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.  *Id*.  To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Hendrix's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough review of all the evidence contained in the record.  After such review, the court finds that Hendrix has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  DISCUSSION

8

## A.  Absolute Immunity

To the extent that Hendrix requests monetary damages from the defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees].  There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701

9

F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B. Claims for Relief — Deliberate Indifference

1. **Standard of Review.**  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and, with such knowledge, disregards the risk by failing to take reasonable measures to abate it.  *Id.* at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however,

every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of … the prison staffs and administrative personnel …. They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted). The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendants acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment"). In determining whether a delay in medical treatment constitutes deliberate indifference, the court considers the seriousness of the medical need, whether the delay worsened the medical condition, and the reason for the delay. *See Goebert v. Lee County, Fla.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" which establishes the detrimental effect caused by the delay in order to succeed on his claim. *Surber v. Dixie County Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted).

The law is well settled that establishing both objective and subjective elements is necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099.

12

With respect to the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm … exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference … .  The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments … .  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety … .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a

> '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114
> S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-
> 25, 115 L.Ed.2d 271 (1991)… .  Even assuming the existence of a serious
> risk of harm and legal causation, the prison official must be aware of specific
> facts from which an inference could be drawn that a substantial risk of serious
> harm exists – and the prison official must also "draw that inference."
> *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective

knowledge of the risk must be specific to that defendant because "imputed or collective

knowledge cannot serve as the basis for a claim of deliberate indifference … .  Each

individual Defendant must be judged separately and on the basis of what that person [knew

at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere

possibility before a [state official's] failure to act can constitute deliberate indifference."

*Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and

citations omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does

not justify liability under section 1983." *Id.*  Even where a prison official perceives a

serious risk of harm to an inmate, the official "may still prevail if he responded reasonably

to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d

693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted).

    **2.  <u>Failure to Protect</u>.**  To survive the properly supported motion for summary

judgment filed by the defendants, Hendrix must first demonstrate an objectively substantial

risk of serious harm from inmate Tuck existed and "that the defendants disregarded that

known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100; *Marsh*, 268 F.3d at 1028–29. If he establishes these objective elements, Hendrix must then satisfy the subjective component. This requires Hendrix to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the defendant] must also draw the inference." Johnson, 568 F. App'x at 721 (internal citation omitted); *Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005).

Hendrix alleges that the defendants acted with deliberate indifference to his safety with respect to an attack perpetrated against him by inmate Unzell Tuck on April 8, 2015 on the D1 side of Dorm D. In support of this claim, Hendrix asserts that no officer was physically present on the D1 side of the dorm at the time of the attack because the officer assigned to provide security for Dorm D was roving the other side of the dorm. Doc. 1 at 3; Doc. 37 at 3. Hendrix, however, concedes that an officer manned the cubicle in Dorm D and does not dispute that additional officers were in the shift office located in the front hall of the dorm at the time of the attack. As further support for his claim, Hendrix alleges that in March of 2015 he advised defendants Carter, Bryant and Lawson he wanted "to go to lock-up because he did not feel safe" and he "went to Lt. Peavy about a problem he was having in the dorm; that he wanted to go to lock-up." Doc. 37 at 4–5. Hendrix asserts that,

15

in response to these generalized complaints regarding a fear for his safety, defendant Peavy simply moved him to another bed "under inmate Unzell Tuck." Doc. 37 at 4. Hendrix alleges that at some point he asked defendants Carter and Peavy "to try to move him (plaintiff) away from Unzell Tuck." Doc. 37 at 4. Hendrix also maintains that Peavy should have known inmate Tuck would attack him because Tuck "had a previous history of violence and stabbing inmates that was homosexuals." Doc. 37 at 4. Finally, in his affidavit filed on November 2, 2017, Hendrix asserts that after telling the defendants he "was scared of the inmate" the defendants advised him "they knew this inmate and he was not going to hurt me." Doc. 47-1 at 1.

The defendants deny acting with deliberate indifference to Hendrix's safety. Specifically, the defendants assert they provided adequate security for Dorm D at the time of the attack—i.e., a cubicle officer, dorm rover and three supervisors in the shift office within the dorm. The defendants further contend that "[i]nmate Hendrix [upon his return to the dorm after completion of his job duties] could have reported to the Shift Commanders on duty if he felt threaten[ed] by inmate Tuck" due to the change in circumstances resulting from his decision earlier in the day to end their relationship, but "[h]e did not do so." Doc. 16-7 at 1. Finally, the defendants aver that Hendrix never requested placement in lock-up due to a generalized fear for his safety nor did he ever make any complaint to them regarding a specific fear of harm from inmate Tuck and, therefore, they had no knowledge that Tuck posed any risk of harm to Hendrix. Docs. 45-1, 45-2 and 45-3. Instead, the

defendants maintain, and it is undisputed that, at the time of the attack Hendrix and Tuck were "involved in a relationship, and [Hendrix] did not want to be in the relationship with inmate Tuck any longer [ – information he provided to a mutual acquaintance, inmate Martarius Cummings]… .  [I]nmate Martarius Cummings [then] … confronted [inmate Tuck] on the yard earlier [on the day of the attack] and stated that inmate Hendrix did not want to be in a relationship with inmate Tuck any longer.  Inmate Tuck … told inmate Cummings that he wanted to hear that from inmate Hendrix… .  [W]hen inmate Hendrix returned from work at approximately 5:45 PM, [inmate Tuck] and inmate Hendrix got into a verbal altercation, and inmate Tuck stabbed inmate Hendrix several times."  Doc. 16-2 at 2.

After a thorough review of the record, the court finds it is devoid of evidence showing "an objectively substantial serious risk of harm" posed by inmate Tuck to Hendrix prior to the April 8, 2015 attack, as is necessary to establish deliberate indifference.  *Marsh*, 268 F.3d at 1028–29.  The conclusory allegations purportedly made by Hendrix to the defendants regarding a generalized fear for his safety and a potential threat of harm from inmate Unzell Tuck based only on his history of violence against other inmates and his use of drugs do not provide an objective basis on which to determine that inmate Tuck posed a serious risk of harm to Hendrix.  Furthermore, even if Hendrix has satisfied the objective component, his deliberate indifference claim nevertheless fails, as he has presented no evidence that the defendants were subjectively aware of any serious risk of harm to him

posed by inmate Tuck. To the contrary, assuming *arguendo* Hendrix advised the defendants he feared inmate Tuck for the above-stated reasons, Hendrix acknowledges that the defendants did not believe that inmate Tuck posed a threat to his safety.  Doc. 47-1 at 1–2. *Johnson*, 568 F. App'x at 722 (holding a complaint was properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) ("[T]he allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack by [a fellow inmate].  Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who attacked him] and failed to take protective measures, his claim fails."); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [inmate attacker.]"); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because plaintiff merely advised he "had problems" with fellow inmate and was "in fear for [his] life."); *Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) (holding that where

18

Plaintiff did "not identif[y] any specific 'serious threat' from [his inmate assailant,]" mere "fact that [assailant] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'"). The record is clear that inmate Tuck only became a threat to Hendrix when Hendrix decided to end their romantic relationship, information Hendrix did not communicate to any defendant prior to the attack. In light of the foregoing, summary judgment is due to be granted in favor of the defendants on plaintiff's claim that they acted with deliberate indifference to Hendrix's safety.

   **3. <u>Delay in Medical Treatment</u>.** Hendrix alleges that defendants Jones and Peavy acted with deliberate indifference to his medical needs by delaying his escort to the health care unit for approximately eight minutes so they could obtain information regarding the identity of his attacker and take photographs of his injuries when he was having difficulty breathing. Doc. 1 a 5–6. The defendants adamantly deny any knowledge of Hendrix's suffering respiratory distress after the attack and contend that the short delay about which Hendrix complains did not violate his constitutional rights Doc. 16-3 at 1; Doc. 16-4 at 1; Doc. 27-1 at 1–2. In support of these assertions, defendants Jones and Peavy maintain that (1) To their knowledge, the injuries suffered by Hendrix, though numerous, were only superficial in nature; (2) Hendrix did not appear in respiratory distress, as he was able to provide details of the assault to them without difficulty; and (3) Hendrix did not communicate to them that he was in severe distress. Doc. 16-3 at 1; Doc. 16-4 at 1; Doc. 27-1 at 1–2. The medical records compiled contemporaneously with the treatment

provided to Hendrix support these assertions.  Specifically, upon arrival at the health care unit, Hendrix made no complaint of shortness of breath or difficulty in breathing.  Doc. 16-1 at 5.  Moreover, the attending nurse did not note any breathing problems suffered by Hendrix.  Doc. 16-1 at 5.

It is undisputed that Hendrix reported the attack to correctional officials at approximately 5:50 p.m.  Defendants Jones and Peavy questioned Hendrix in an attempt to learn the identity of the assailant so that proper security measures could be undertaken to ensure the protection of staff and inmates remaining in the dorm, and Hendrix answered without difficulty. Doc. 16-2 at 2. Jones photographed the injuries suffered by Hendrix for investigative purposes and use in potential criminal proceedings.  Doc. 27-1 at 2.  Jones states that taking the photographs took "less than a minute" and was "done quickly … without causing further harm to Mr. Hendrix."  Doc. 27-1 at 2.  Jones left the dorm with Hendrix in route to the health care unit by approximately 5:58 p.m. Doc. 16-2 at 2.  Hendrix arrived at the health care unit at 6:00 p.m., within ten minutes of his first encounter with correctional officials.  Doc. 16-2 at 5.  The attending nurse evaluated Hendrix's injuries, which included puncture wounds, abrasions and scratches, and obtained orders from the facility's physician to transport Hendrix to a local hospital for treatment.  Doc. 16-2 at 5.  Hendrix arrived at the medical center at approximately 7:30 p.m., where he remained until 9:50 p.m.  Doc. 16-2 at 2-3.  Upon his return to Easterling at approximately 10:25 p.m., correctional officers escorted Hendrix to the health care unit for evaluation by the medical

staff.  Around midnight, the staff physician ordered Hendrix's release from the healthcare unit for return to his assigned living area.  Doc. 16-2 at 3.

Hendrix presents no verifiable medical evidence establishing any detrimental effect from the approximately eight-minute delay in correctional officials' escorting him to the health care unit, a necessary element to his claim that this delay constituted deliberate indifference.  *Surber*, 206 F. App'x at 933; *Hill*, 40 F.3d at 1188.  Instead, the medical records indicate that no medical harm resulted from this short delay, as the nurse noted no respiratory issues and the staff physician determined that any treatment provided to Hendrix could await his transport to a free-world medical center approximately 25 minutes from Easterling.  Thus, Hendrix's claim that the brief delay in escorting him to the health care unit constituted deliberate indifference is without merit.

Further, the court finds that the reasons for the delay—i.e., determining the identity of the armed assailant to secure the safety of staff members and other inmates and obtaining photographs for evidentiary purposes—constituted valid reasons for the brief delay. Hendrix has also failed to present any evidence showing that defendants Peavy and Jones knew that the delay in transporting him to the health care unit would create a substantial risk to his health and, with this knowledge, consciously disregarded the risk.  The record is therefore devoid of evidence that these defendants acted with deliberate indifference in obtaining medical treatment for Hendrix.

For the foregoing reasons, summary judgment is due to be granted in favor of defendants Peavy and Jones on plaintiff's claim of deliberate indifference.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **June 27, 2018**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 13th day of June, 2018.

/s/ Susan Russ Walker_____
Susan Russ Walker
United States Magistrate Judge